**SO ORDERED.**

**SIGNED this 15 day of January, 2013.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILSON DIVISION**

IN RE:

HEATHER FULCHER BARNES                 **CHAPTER 13**
                                       **CASE NO. 12-06613-8-RDD**

     DEBTOR

## ORDER

Pending before the Court is the Trustee's Objection to Confirmation and Motion to Dismiss filed by the Chapter 13 Trustee (the "Trustee") on October 29, 2012, the Memorandum of Law in Support of Trustee's Objection to Debtors' Confirmation and Motion to Dismiss filed by the Trustee on November 27, 2012, the Amended Memorandum of Law in Support of Trustee's Objection to Debtors' Confirmation and Motion to Dismiss filed by the Trustee on December 21, 2012, the Response to Trustee's Objection to Confirmation and Motion to Dismiss filed by Heather Fulcher Barnes (the "Debtor") on October 31, 2012, and the Memorandum in Opposition of Trustee's Objection to Debtors' Confirmation and Motion to Dismiss filed by the Debtor on December 5, 2012.  The Court conducted a hearing on this matter on December 10, 2012 in Raleigh, North

Carolina.

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on September 14, 2012. Robert R. Browning was duly appointed as the Trustee, and filed the Trustee's Objection to Confirmation and Motion to Dismiss for failure to file a plan in good faith and failure to pay an amount necessary during the applicable commitment period. The Debtor has filed the required Schedules A through J, a Statement of Financial Affairs, a master Mailing Matrix, and a Chapter 13 Statement of Income and Calculation of Commitment Period and Disposable Income (hereinafter the "B22C"). After completing Parts I and II of the B22C, the Debtor calculated her household income to be below the median family income in North Carolina for comparably sized households and listed no disposable income on B22C.

The Debtor filed a proposed Chapter 13 plan pursuant to 11 U.S.C. § 1321 (the "Plan"). The Plan proposes to pay a set amount for a period of time equal to the respective applicable commitment period. The plan proposes to pay $99.00 for thirty-six (36) months. The total of plan payments is $3,564.00 and consists of $2,925.00 in attorneys' fees.

Schedule F shows the Debtor has approximately $22,578.71 in unsecured claims. Schedule I shows a combined average monthly income of $2,755.67. Schedule J shows average monthly expenses of $2,791.67 leaving a monthly net income of negative $36.00. Schedule J shows an

2

expenditure of $91.00 per month for secured/priority debts averaged over thirty-six (36) months.[1]

This will result in an approximate 2.1% payout to unsecured creditors without early termination

language.

      The Debtor's Plan contains language commonly referred to as "early termination language,"

and states:

> This Chapter 13 Plan will be deemed complete and shall cease and a discharge shall be entered, upon payment to the Trustee of a sum sufficient to pay in full: (A) Allowed administrative priority claims, including specifically the Trustee's commissions and attorneys' fees and expenses ordered by the Court to be paid to the Debtor's Attorney, (B) allowed secured claims (including but not limited to arrearage claims), excepting those which are scheduled to be paid directly by the Debtor "outside" the plan, (C) Allowed unsecured priority claims, (D) Cosign protect consumer debt claims (only where the Debtor proposes such treatment), (E) Post-petition claims allowed under 11 U.S.C. § 1305, (F) The dividend, if any, required to be paid to non-priority general unsecured creditors (not including priority unsecured creditors) pursuant to 11 U.S.C. § 1325(b)(1)(B), and (G) Any extra amount necessary to satisfy the "liquidation test" as set forth in 11 U.S.C. § 1325(a)(4).

[1]

| Proposed Plan | Unsecured Debt | Dividend to Unsecured Creditors | Early Termination | Form B22C | Sch. I - Sch. J |
|---|---|---|---|---|---|
| a. $99 x 36 months = $3,564<br>b. Attorney's Fees = $2,925<br>c. Trustee's Commission = $160.38<br>d. Payment to Unsecured Creditors with early termination language = $0 | $22,578.71 | 0% | Yes - included in proposed plan | N/A (Below-median) | -$36 |

With the early termination language, this case would terminate after payment of attorney's fees and the Trustee's commissions in approximately thirty-two (32) months.

## DISCUSSION

The issue before the Court is whether this debtor, who has zero or less disposable income, as determined by Form B22C, may obtain confirmation of a Chapter 13 Plan, which in effect will terminate before the respective applicable commitment period when the plan proposes to discharge substantial amounts in unsecured debt and pay only the Trustee commission and the debtor's attorney fees.

The Court shall confirm a Chapter 13 plan if the provisions of 11 U.S.C. § 1325(a) are met. In cases where an objection to confirmation has been made by either the trustee or an unsecured creditor the court may not confirm a plan unless:

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

11 U.S.C. §1325(b)(4) defines "applicable commitment period" as

> (A) subject to paragraph (B), shall be –
> > (i) 3 years; or
> > (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than –
> > > (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
> > > (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
> > > (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family

4

of 4 or fewer individuals, plus $625 per month for each individual in
excess of 4; and
(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A),
but only if the plan provides for payment in full of all allowed unsecured claims over
a shorter period.

The phrase "projected disposable income" is not defined in the Bankruptcy Code. The Code

defines "disposable income" as "current monthly income to be received by the debtor[2] . . . less

amounts reasonably necessary to be expended . . ." 11 U.S.C. § 1325(b)(2). The phrase "amounts

reasonably necessary to be expended" includes the full amount needed for "maintenance or support,"

for a debtor whose income is below median for his or her state, but for an above-median-income

debtor, only certain expenses are included. *Hamilton v. Lanning*, 130 S.Ct. 2470 177 L.Ed.2d 23

(2010).

This Court has previously discussed "projected disposable income" and its interplay with §

1325(b)(2) in *In re Musselman*, 379 B.R. 583 (Bankr. E.D.N.C. 2008)[3] and in *In re Alexander*, 344

---

[2]The term "current monthly income" –
(A) means the average monthly income from all sources that the debtor receives
(or in a joint case the debtor and the debtor's spouse receive) without regard to
whether such income is taxable income, derived during the 6-month period ending
on–
(i) the last day of the calendar month immediately preceding the date of
the commencement of the case if the debtor files the schedule of current
income required by section 521(a)(1)(B)(ii); or
(ii) the date on which current income is determined by the court for
purposes of this title if the debtor does not file the schedule of current
income required by section 521(a)(1)(B)(ii); and
(B) includes any amount paid by any entity other than the debtor (or in a joint case
the debtor and the debtor's spouse), on a regular basis for the household expenses
of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if
not otherwise a dependent) . . . .
11 U.S.C. § 101(10A)

[3]In *In re Musselman*, the Chapter 13 debtor's Form B22C indicated that he was an above-
median income debtor and had a monthly disposable income of negative $255.80. The debtor
proposed plan payments for 55 months. eCast Settlement Corporation, the holder of two
unsecured claims against the debtor, objected to the terms of the plan insisting the debtor's plan

B.R. 742, 749 (Bankr. E.D.N.C. 2006) (finding that to calculate a Chapter 13 debtor's projected disposable income, "one simply takes the calculation mandated by § 1325(b)(2) and does the math," while recognizing the debate and split of authority among bankruptcy courts).

Subsequent to the decisions in *Musselman v. eCast Settlement Corp.*, 394 B.R. 801, 814 (E.D.N.C. 2008) and *In re Alexander,* 344 B.R. 742, 749 (Bankr. E.D.N.C. 2008) the Supreme Court of the United States has interpreted the phrase "projected disposable income" in *Hamilton v. Lanning*, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). There, the above-median-income Chapter 13 debtor, in the six months preceding the bankruptcy filing, received a "one-time buyout from her former employer" greatly increasing the debtor's average monthly income for the sixth month period preceding the filing date. *Id.* at 2470. Post-petition, however, the debtor's income was drastically reduced with her new job. *Id.* Her monthly expenses calculated pursuant to § 707(b)(2), were $4,228.71 and her "disposable income" as reported on Form B22C was $1,114.98. On her Schedule

---

should be for five years or 60 months.

The Bankruptcy Court held that the length of the applicable commitment period is tied to the above or below-median current monthly income of the debtor, not to the projected disposable income of the debtor. The applicable commitment period must be three years for below-median income debtors or five years for above-median income debtors, unless debtors pay all allowed unsecured claims in full, prior to the expiration of the applicable commitment period. The above-median income debtor must propose a plan for payments over a period of five years, unless unsecured creditors are paid in full over a shorter period. Both the debtor and the creditor appealed the bankruptcy court's order to the District Court.

The District Court reversed the bankruptcy court's decision as to the length of the debtor's plan. The District Court held that the applicable commitment period time requirements do not apply to above-median debtors with zero or negative "projected disposable income." *Musselman v. eCast Settlement Corp.*, 394 B.R. 801, 814 (Bankr. E.D.N.C. 2008). Further, after analyzing both the multiplicative approach, which finds "'projected disposable income' intimately related to 'disposable income'" as identified in *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006), and the "forward-looking approach," which "require[s] a forward looking inquiry to determine what a debtor's 'projected disposable income' will be during the pendency of the chapter 13 plan," the District Court held that "projected disposable income" is equivalent to the debtor's "disposable income" as defined in 11 U.S.C. § 1325(b)(2). *Id.* at 808-13.

I, she reported an income below the state median of $1,922.00 per month and on her Schedule J she reported actual monthly expenses of $1,722.97, resulting in a monthly disposable income of $149.03. *Id.* The debtor filed a plan that required a $144.00 monthly payment for thirty-six (36) months. *Id.* The trustee objected to confirmation on the ground that the debtor was not committing all of her projected disposable income to the repayment of creditors. *Id.* The trustee advocated for a mechanical approach to calculating projected disposable income, which involves multiplying disposable income, as calculated on Form B22C, by the number of months in the commitment period. *Id*. The bankruptcy court endorsed the debtor's proposed monthly payment of $144.00 but required a sixty (60) month plan period. *Id.* at 2471. The trustee appealed the order to the Tenth Circuit Bankruptcy Appellate Panel, which affirmed. *Id*. The trustee then appealed to the Tenth Circuit Court of Appeals, which affirmed. *Id*. The Supreme Court granted certiorari. *Id.*

The Supreme Court held that when a bankruptcy court calculates a Chapter 13 debtor's projected disposable income, the court may "account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478. In coming to this conclusion the Supreme Court discussed the phrase "projected disposable income." In its discussion, the Court noted

> the term 'projected' is not defined, and in ordinary usage future occurrences are not 'projected' based on the assumption that the past will necessarily repeat itself. For example, projections concerning a company's future sales or the future cash flow from a license take into account anticipated events that may change past trends.

*Id.* at 2471. The Court noted "[t]here is no dispute that [the debtor] would in fact receive far less than [the calculated amount] per month in disposable income during the plan period, so [the trustee's] projection does not accurately reflect 'income to be received' during that period." *Id.* at 2474. The Court recognized that Congress rarely uses the term "projected" to refer to simple

7

multiplication, and "when Congress wishes to mandate simple multiplication, it does so unambiguously - most commonly by using the term 'multiplied.'" *Id.* at 2472. The Court reasoned that the mechanical approach "clashes repeatedly with the terms of 11 U.S.C. § 1325," noting that the language of § 1325(b)(1)(B) 'to be received during the applicable commitment period' "strongly favors the forward-looking approach," and that the mechanical approach "effectively reads this phrase out of the statute when a debtor's current disposable income is substantially higher than the income that the debtor will predictably receive during the plan period." *Id.* at 2474.[4]

Further, the Court noted that § 1325(b)(1) directs bankruptcy courts to determine projected disposable income as of the *effective date* of the plan, rather than the filing date of the plan. The Court recognized that not considering the debtor's changed circumstances would be inconsistent with the language of 11 U.S.C. § 1325 and would produce "senseless results" such as creditors being denied "payments that the debtor could easily make," or denying "the protection of Chapter 13 to debtors who meet the chapter's main eligibility requirements." *Id.* at 2475-2476. The Court noted that "[i]n cases in which the debtor's disposable income is higher during the plan period, the mechanical approach would deny creditors payments that the debtor could easily make." *Id.* at 2476. The Court endorsed a "forward-looking approach" allowing the bankruptcy court or the trustee to take into consideration changes in a debtor's income that are "known or virtually certain at the time of confirmation." *Id.* at 2478.

Following *Lanning,* the Supreme Court in *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 178 L.Ed.2d 603(2011), held a debtor may not deduct on form B22C an IRS Local Standard

---

[4]The Supreme Court's adoption of the forward-looking approach effectively reverses the holding of the United States District Court for the Eastern District of North Carolina in *Musselman v. eCast Settlement Corp.*, which adopted the multiplication or mechanical approach, where disposable income and projected disposable income are the same. *See supra* note 5.

deduction for an expense which the debtor will not incur during the life of the plan. *Id.* at 725. In making its determination the Court noted that an "expense amount is 'applicable' within the plain meaning of the statute when it is appropriate, relevant, suitable, or fit." *Id.* The Court noted that "[i]f a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute." *Id.* at 725. The Court cited *Lanning*, when commenting on Congress' intent in passing BAPCPA:

> Congress designed the means test to measure the debtor's disposable income and, in that way, to ensure that [they] repay creditors the maximum they can afford. H.R. Rep., at 2. This purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment. Cf. *Hamilton*, 560 U.S. at ___, 130 S.Ct., at 2475-2476 (rejecting an interpretation of the Bankruptcy Code that 'would produce [the] senseless resul[t] of 'deny[ing] creditors payments that the debtor could easily make'). Requiring a debtor to incur the kind of expenses for which he claims a means-test deduction thus advances the BAPCPA's objectives.

*Id.*

Subsequent to the Supreme Court's decision in *Lanning* and *Ransom*, other courts have followed suit allowing for accounting of changes in both income and expenses when determining "projected disposable income." The Fourth Circuit in *Morris v. Quigley* addressed the issue of "whether a debtor's 'projected disposable income' must be equal to the debtor's 'disposable income' for purposes of satisfying § 1325(b)(1)(B), or whether the projected disposable income should reflect changes that have occurred or that will occur and that are known as of the date of confirmation." 673 F.3d 269, 272 (4th Cir. 2012).   Specifically, the court addressed whether "projected disposable income" should take into account the debtor's intention to surrender two vehicles to her secured creditors. *Id.* at 269. The Fourth Circuit relied on *Lanning* and noted the Supreme Court adopted a "forward-looking approach" and held that "when a bankruptcy court calculates a debtor's projected

disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 273 (citation omitted). The court found that "failing to account for [known decreases in a debtor's expenses] and thereby denying the unsecured creditors payments that the [d]ebtor clearly could make would just be the sort of 'senseless result []' that the *Lanning* Court rejected." *Id.* at 274 (citing *Hamilton v. Lanning*, 130 S.Ct. 2464, 2475, 177 L.Ed.2d 23 (2010)). The debtor in the case attempted to distinguish *Lanning* by arguing that *Lanning* involved a change in income while the debtor's case involved a change in expenses. *Id.* The court found that the principles articulated in *Lanning* applied equally to both situations. *Id.*

The Bankruptcy Court for the Eastern District of North Carolina has recently commented on the *Lanning, Ransom*, and *Quigley* opinions and noted that

> taken together, this recent line of cases departs from the strict formulaic approach to the means test and takes into account what is likely to occur in the future. Applying this reasoning furthers the purpose of the means test, "which was intended to 'ensure that those who can afford to repay some portion for their unsecured debts be required to do so.'"

*In re Sterrenberg*, Case No. 11-08543-8-RDD, 2012 WL 1835183, at *5 (Bankr. E.D.N.C. May 18, 2012) (citing *In re Harris*, 353 B.R. 304, 309 (Bankr. E.D. Okla. Oct. 13, 2006); *In re Krawczyk*, Case No. 11-09596-8-JRL, 2012 WL 3069437 at *5 (Bankr. E.D.N.C. July 27, 2012).

The same principles laid out in *Lanning, Ransom*, and *Quigley*, have been applied when determining

> whether the income that becomes available after the debtors have fully repaid their 401(k) loans (which is allowed by 11 U.S.C. § 1322(f)) is "projected disposable income" to be paid to the unsecured creditors or whether the income can be used to begin making voluntary contributions to the debtors' 401(k) plans and deemed excludable from both disposable income and property of the estate under 11 U.S.C. § 541(a)(1) and (b)(7).

*Seafort v. Burden*, 669 F.3d 662, 663 (6th Cir. 2012). The Sixth Circuit held that "income made

10

available once Debtors' 401(k) loan repayments are fully repaid is properly committed to the debtors' respective Chapter 13 plans for distribution to the unsecured creditors and may not be used to make voluntary retirement contributions." *Id*. at 674. While the Sixth Circuit relied on an analysis of §§ 541(b)(7), 541(a)(1), and 1306(a) to reach its decision, the court did cite to the Congressional intent and purpose of BAPCPA "to ensure debtors devote their full disposable income to repaying creditors and maximizing creditor recoveries." *Id.* at 674 (citations omitted).

While the Supreme Court did not address the definition of the phrase "applicable commitment period" in *Lanning*, other courts have cited the Supreme Court decision to support a temporal interpretation of the "applicable commitment period." The Eleventh Circuit in *In re Tennyson*, 611 F.3d 873 (11th Cir. 2010), held that the applicable commitment period mandates a minimum duration for an above-median income debtor's Chapter 13 plan. *Id.* at 874. The facts of *In re Tennyson* involved an above-median income debtor whose Form B22C indicated that he had negative disposable income. *Id.* Using the multiplier approach, this debtor determined that he had no applicable commitment period since he had no projected disposable income. *Id.* The debtor proposed a three-year plan and the Chapter 13 Trustee objected. *Id.* The Eleventh Circuit relied on *Lanning's* rationale to support its holding that the provisions of Title 11 setting out the applicable commitment period require an above-median income debtor to remain in a Chapter 13 bankruptcy for five (5) years. Id. at 878. The Circuit Court reasoned that "*Lanning* does not directly comment on the definition of 'applicable commitment period' but what it does indicate is that §1325(b) is not a strict mechanical formula existing in a vacuum." *Id.* With such a flexible approach, the Eleventh Circuit concluded that "in order for 'applicable commitment period' to have any definite meaning, its definition must be that of a temporal term derived from §1325(b)(4)." Id. at 879. The Eleventh

11

Circuit did not make a distinction between positive and negative disposable income and applied the temporal approach to all debtors. *Id.*

The Sixth Circuit in *Baud v. Carroll* noted that in *Lanning,* the Supreme Court relied on the "lack of explicit multiplier language in §1325(b)(1)" to adopt a forward-looking approach and that a similar lack of multiplier language supports a temporal reading of §1325(b). *Baud v. Carroll*, 634 F.3d 327, 339 (6th Cir. 2011). There, the Sixth Circuit relied on the language in *Lanning* and *Ransom* to require a five year applicable commitment period upon the debtor whose disposable income was less than zero. The court stated:

> This brings us to the issue of whether there is an exception to the temporal requirement set forth in § 1325(b) for debtors with zero or negative projected disposable income . . . .
>
> In addressing this difficult issue, we begin once again with the language of the statute itself. . . . Under the express language of § 1325(b)(4), the applicable commitment period does not depend on the amount of the debtor's projected disposable income. To the contrary, the applicable commitment period depends on the current monthly income of the debtor and the debtor's spouse combined. . . . Accordingly, we conclude that the better reading of § 1325(b) is that the temporal requirement of the applicable commitment period applies to debtors facing a confirmation objection even if they have zero or negative disposable income.

*Id.* at 350-351 (emphasis added).

Relying on *Lanning* and *Ransom*, the Sixth Circuit stated:

> [A]s the Supreme Court recognized in both *Ransom* and *Lanning,* the legislative history makes clear that the focus of Congress in enacting BAPCPA was on maximizing the amount of disposable income that debtors would pay creditors. And there are numerous circumstances in which disposable income might become available to the Appellees and to other debtors after confirmation, even those who have zero or negative projected disposable income as of confirmation. . . .

*Id.* at 352-53, 357.

Courts that have applied the mandatory applicable commitment period to debtors with zero

12

or negative projected disposable income have concluded that this approach would best serve BAPCPA's goal of ensuring that debtors repay creditors the maximum amount they can afford. *See*, e.g., *In re Tennyson*, 611 F.3d 873, 879 (11th Cir. 2010); *In re Moose*, 419 B.R. 632, 635 (Bankr. E.D.Va. 2009). Even pre-BAPCPA case law points in favor of a forward-looking approach. In *Hamilton v. Lanning*, the Supreme Court looked to pre-BAPCPA practice and concluded that "we 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'" *Hamilton v. Lanning*, 130 S.Ct. 2464, 2473, 177 L.Ed.2d 23 (2010) (quoting *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric Co.*, 549 U.S. 443, 454, 127 S.Ct. 1199 (2007)). If the Court allowed above and below-median income debtors to exit bankruptcy upon payment of their secured claims, unsecured creditors would not be able to capitalize on any subsequent increase in the debtors' income. *See In re King*, 439 B.R. 129, 139 (Bankr. S.D.Ill., 2010).

Prior to BAPCPA, the Bankruptcy Code required that in order to be confirmed, a Chapter 13 plan had to be proposed for a minimum duration of three (3) years unless unsecured claims were paid in full in a shorter period of time. 11 U.S.C. §1325(b)(1)(2004). Before BAPCPA, the three (3) year period announced in §1325(b)(1) operated as a temporal requirement. *See Fridley v. Forsythe* (*In re Fridley*), 380 B.R. 538, 544 (9th Cir. B.A.P. 2007). After BAPCPA, the applicable commitment period in §1325(b)(1) operates as a temporal requirement. *See Baud v. Carroll*, 634 F.3d 327, 341 (6th Cir. 2011). The addition of the phrase "to unsecured creditors" in §1325(b) does not show a clear indication that Congress intended the courts to depart from their pre-BAPCPA practice of declining to confirm plans of less than the required length. *Id.* at 342.

BAPCPA's core purpose is to ensure that debtors devote their full disposable income to

13

repaying creditors and maximizing creditor recoveries. *See Ransom v. FIA Card Services*, 131 S.Ct. 716, 725, 178 L.Ed.2d 603 (2011); *see Seafort v. Burden*, 669 F.3d 662, 674 (6th Cir. 2012); *Baud v. Carroll,* 634 F.3d 327, 343 (6th Cir. 2011).

Congress intended to require higher income debtors to pay 100% of unsecured claims or make payments for five (5) years. *Coop v. Frederickson,* 375 B.R. 829, 837 (8th Cir. B.A.P. 2007) (Federman, J., dissenting). Looking at legislative history, the House Report on §1325(b) shows that the applicable commitment period is a durational requirement. *Id*. There are numerous circumstances in which disposable income might become available to the debtors after confirmation, even for those who have zero or negative projected disposable income.

The Bankruptcy Court for the District of Kansas noted:

[A] negative disposable income number on Form B22C does not conclusively establish the debtor has no disposable income to be received in the Applicable Commitment Period. *Indeed, a feasible plan payment proposal rebuts the presumption that Form B22C alone determines disposable income.* A negative number on Form B22C indicates a plan is not feasible. However, if the debtor can propose a feasible plan payment, then the debtor has shown there is, in fact, disposable income, and the plan must last for five years if his income is above median. Debtors cannot have it both ways. If they want to rely exclusively on Form B22C with a negative disposable income number, then they cannot propose a feasible plan. On the other hand, a feasible plan payment commits debtors to a certain plan length, for the above-median income debtor, of no less than five years.

*In re Beckerle*, 367 B.R. 718, 721 (Bankr. D. Kan. 2007) (citations omitted) (emphasis added).

Additionally, the debtor's "disposable income" may not be the same as the debtor's actual "projected disposable income." *See In re Frederickson*, 545 F.3d 652, 659 (8th Cir. 2008). The debtor's actual expenses may be far less than the regional averages that are assumed in the calculation. *Id.* Thus, a debtor's "projected disposable income" is a forward-looking number and courts should look at things that are likely to occur in the future instead of relying on historical

information. *Id*. Clearly, the Supreme Court and a majority of other courts are emphasizing a debtor's *actual ability to pay* in the future, rather than being tied to the mechanical formula, which often produces senseless results.

The United States District Court for the Eastern District of North Carolina addressed the applicable commitment period in *Musselman v. eCast Settlement Corp.*, 394 B.R. 801 (E.D.N.C. 2008). In *Musselman*, the court addressed the issue of whether the applicable commitment period as defined in § 1325(b)(4) determined the length of the plan regardless of the debtor's projected disposable income. The *Musselman* Court held that debtors who have no projected disposable income also have no applicable commitment period for purposes of § 1325(b). *Id.* at 814. While *Musselman* speaks directly to the issue at hand, it was decided pre-*Lanning*. Based on the Supreme Court decisions in *Lanning, Ransom*, and lower court's interpretations of these decisions, this Court is compelled to adopt a forward-looking approach to determine projected disposable income and holds that the Applicable Commitment Period is a temporal requirement for all debtors. Had *Lanning*, *Ransom*, *Quigley*, *Sterrenberg*, *Baud* and *Tennyson* been decided prior to the District Court's holding in *Musselman* regarding the applicable commitment period, this Court concludes the District Court would not have reversed this Court's holding in *In re Musselman*. Surely if Congress intended for plans to contain these early termination provisions, Congress would have certainly said so.[5] Therefore, if unsecured claims are not paid in full prior to thirty-six (36) months, the applicable commitment period of the plan must be thirty-six (36) months for below median income debtors and sixty (60) months for above median income debtors. 11 U.S.C. § 1325(b)(4)(B).

---

[5] For instance, § 1325(b)(4)(B), is the only statutorily permitted termination of the applicable commitment period prior to the expiration of the applicable commitment period, which provides unsecured creditors must be paid in full.

The adoption by the Supreme Court in *Hamilton v. Lanning*, of the "forward-looking" approach is totally contradictory to the concept of a plan which includes an early termination provision. "Forward-looking" clearly sanctions and requires a debtor to commit projected disposable income to be received during the applicable commitment period, which means thirty-six (36) months for a below median income debtor, or sixty (60) months for an above median income debtor. *Lanning* proscribes that courts must account for changes in a debtor's income or expenses that are known or virtually certain at the time of confirmation. It is known or virtually certain at the time of confirmation that a debtor proposes to terminate the plan early after payment of attorney's fees and other designated claims. At that point in time, it is known or virtually certain that the debtor will continue to have the income to continue making payments for the duration of the thirty-six (36) or sixty (60) month period and will have the income available after attorney's fees are paid. This court has adopted the forward-looking approach which is the majority view of courts across the nation, which requires a debtor to commit all projected disposable income for thirty-six (36) or sixty (60) months. If disposable income is zero or less, the court must look to projected disposable income based on income minus expenses from Schedules I and J to determine what actual income or expenses are known or virtually certain at the time of confirmation.[6] In addition, it is known or virtually certain that attorney's fees will be paid prior to the expiration of the applicable commitment period, which frees up additional projected disposable income to be received during the applicable commitment period for the benefit of unsecured creditors.

This Court also has concerns with a debtor's plan that proposes to pay only attorneys' fees

---

[6] In *Hamilton v. Lanning*, the debtor's payment of $144.00 per month was not the recalculated disposable income of B22C, but was the projected disposable income determined by taking income from Schedule I minus expenses of Schedule J. This is further confirmation that Schedule I and J may be used by the court to determine projected disposable income.

16

and discharge substantial unsecured debts.  One of the statutory requirements for a Chapter 13 debtor is that he or she must propose a payment plan that satisfies the list of requirements found in 11 U.S.C. § 1325(a).  The instant case concerns the good faith requirements required by subsections (a)(3) and (a)(7).  A Chapter 13 plan may be confirmed only if a bankruptcy court finds the petition was filed, and the plan was proposed, in good faith.  §§ 1325(a)(3), (7).  In the absence of objections by creditors or a trustee, a bankruptcy court has an independent duty to determine that all prerequisites for plan confirmation have been satisfied.  *United Student Aid Funds, Inc. v. Espinosa*,130 S.Ct. 1369, 1381, 176 L.Ed.22 158 (2010).

Congress did not provide a definition of the term "good faith" in the statute.  The legislative history is also silent on its interpretation of the term "good faith."  Absent a statutory definition, the meaning of the term "good faith" has been the subject of extensive litigation and without legislative guidance, the courts have developed their own criteria for determination.  A Chapter 13 debtor has the burden of proof to establish each element required for confirmation, especially showing that the case was filed and the plan was proposed in good faith.  In determining whether a plan has been proposed in good faith, courts in the Fourth Circuit examine the totality of the circumstances.  *Deans v. O'Donnell (In re Deans)*, 692 F.2d 968, 972 (4th Cir. 1982).   *Deans* addressed the issue of whether 11 U.S.C. § 1325(a)(3) requires that all plans must provide substantial and meaningful repayment to the debtor's unsecured creditors.  *Id.* at 969.  The Fourth Circuit concluded that the plain language of the statute does not impose a per se rule of substantial repayment into the "good faith" requirement in every case.  *Id.* at 970.  The *Deans* Court explained:

> [A] court must make its determination based on all militating factors.  Without attempting either to be exhaustive or to establish a criteria "checklist," these factors might include, depending on the particular case, not only the percentage of proposed repayment, but also the debtor's financial situation, the period of time payment will

17

be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor. Although the court's discretion in making the good faith determination is necessarily a broad one, the totality of circumstance must be examined on a case by case basis in order fairly to apply the statute as now written.

*Id.*

While "good faith" does not necessarily require a substantial repayment to creditors, the proposed Plan, with the Trustee's early termination language, provides payment of only attorney fees. Such proposal does not strike this Court as a good faith attempt to repay pre-petition creditors. Other than the debtor, who is seeking a discharge, it is difficult to understand how these Chapter 13 plans benefit anyone other than counsel.[7] The fees charged by counsel are substantially higher than the market rate for Chapter 7 attorney fees. The attorney fees are usually paid through the plan in Chapter 13 whereas the fees in Chapter 7 are usually paid up front. The totality of the circumstances test requires an examination into all relevant circumstances of a case. The inquiry is broad but it rests on whether there has been an abuse of the provisions, purpose or spirit of the Bankruptcy Code.

The Supreme Court has stated that a central purpose of the Bankruptcy Code is to provide a procedure to give certain debtors a fresh start and to maximize the payment to creditors. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659 (1991). Chapter 13 is titled "Adjustment of Debts

---

[7] Some would argue this Chapter 13 plan is an attorney fee collection mechanism for what should have been Chapter 7 attorney fees. The attorney could just as easily and with lower expense to the debtor, finance his fee post-petition over eighteen monthly payments to file a Chapter 7. Then the attorney bears the risk of nonpayment, not the Chapter 13 Trustee. *See* Standing Order (Bankr. N.D.Ill. Feb. 17, 2004) (allowing a debtor's attorney in a Chapter 7 to enter a post-petition contract for payment for post-petition services); *Walton v. Clark & Washington, P.C. (In re Walton)*, 469 B.R. 383 (Bankr. M.D.Fla. 2012) (approving post-petition fee agreements between an attorney and debtor in Chapter 7 cases and finding there is no prohibition against a debtor making post-petition installment payments for post-petition services).

18

of an Individual with Regular Income." The purpose of Chapter 13 is to enable debtors to adjust their debts by creating a plan to pay their debts out of future income. A Chapter 13 Plan proposing payment of attorneys' fees only is contrary to this position and warrants close examination.

A recent First Circuit case stated that the dangers of "attorney fee only" plans are manifest, "and a debtor who submits such a plan carries a heavy burden of demonstrating special circumstances that justify its submission." *Berliner v. Pappalardo (In re Puffer)*, 674 F.3d 78, 79 (1st Cir. 2012). The Court noted that "attorney fee only" cases could be "vulnerable to abuse by attorneys seeking to advance their own interests without due regard for the interests of the debtors." *Id.* at 83. The Court further recognized that while these plans "should not be used as a matter of course, there may be special circumstances, albeit relatively rare, in which this type of odd arrangement is justified." *Id.*

Although the First Circuit recently held that it is not per se bad faith to file an "attorney fee only" Chapter 13 plan, the vast majority of cases from across the country find such plans to be highly indicative of bad faith, if not per se bad faith. *See e.g., In re Arlen*, 461 B.R. 550 (Bankr. W.D.Mo. 2011) ("[Attorney fee only Chapter 13] cases are little more than disguised Chapter 7 proceedings. Utilizing Chapter 13 in this fashion blurs the distinctions between the two chapters and the various differences in their scope and purpose as reflected by the different applicable statutory provisions."); *In re Jackson*, 2012 WL 909782 (Bankr. N.D.Ala. 2012) (court found a lack of good faith where only a small payment would be made to unsecured creditors, with the bulk of funds going to the Debtor's lawyer and noted that when a plan seeks to only make nominal payments, or no payments at all, to unsecured creditors, it is only seen as being proposed in good faith when some exceptional circumstances are present).

This District previously expressed its position regarding Chapter 13 plans whose sole purpose was to pay counsel fees and it upheld "attorney fee only" Chapter 13 plans. The issue was whether the presumptive attorney fee of $3,000.00 should be reduced. *In re Elkins*, No. 09-09254-8-JRL, 2010 WL 1490585, at *2, 2010 Bankr.LEXIS 1085, at *4 (Bankr. E.D.N.C. Apr. 13, 2010). That bankruptcy court was not called upon to rule on the good faith question, but only on the issue of whether the standard presumptive fee was appropriate in an attorney fee only case.

A majority of courts around the nation hold that "attorney fee only" Chapter 13 plans must meet a heavy burden of proof to allow the court to find these plans comply with the "good faith" requirements in §§ 1325(a)(3) and (7) respectively. The court in *In re Buck*, 432 B.R. 13 (Bankr. D.Mass. 2010), summarized the reported case law on this issue:

> The overwhelming majority of courts that have addressed this question agree that Attorney Fee-Only Chapter 13 Plans fail to meet the good faith requirement of § 1325(a)(3). However, the plans in some of those cases also failed to meet good faith requirements on additional grounds. *See In re Sanchez*, No. 13-09-10955 MA, 2009 WL 2913224, at *1, *3 (Bankr. D.N.M. May 19, 2009) (finding a lack of good faith with a plan that pays only attorneys' fees in a case where debtors have a history of incurring "debts they are unable to repay and then seek[ing] bankruptcy protection every few years in order to alleviate their debt burden"); *In re Lehnert*, No. 07-55988, 2009 WL 1163401, at *4 (Bankr. E.D.Mich. Jan. 14, 2009) (sustaining an objection to an Attorney Fee-Only Plan as not filed in good faith because the debtors were able to afford some dividend to creditors); *In re Montry*, 393 B.R. 695, 696-97 (Bankr. W.D.Mo.2008) (stating "[c]onfirming a Chapter 13 plan in a case where the only benefit to a debtor— beyond the relief available in Chapter 7—is the ability to pay the bankruptcy attorney's fees over time would . . . unnecessarily raise the cost of filing a bankruptcy petition for debtors who do not need or are ill suited for Chapter 13; and subvert the Supreme Court's holding in *Lamie v. U.S. Trustee* prohibiting the payment of post-petition attorney's fees from a debtor's Chapter 7 bankruptcy estate.") (footnotes omitted); *In re Paley*, 390 B.R. 53, 59-60 (Bankr. N.D.N.Y.2008) (stating "[t]he Debtors are not adjusting anything, much less debt; they are canceling and eliminating the claims of creditors while simply paying their attorneys. Under the theories advanced by the Debtors, carried to an absurd extreme, if they had paid their respective attorneys in full up front, they would have proposed a plan of $0 for zero months and demanded a Chapter 13 discharge. . . . These cases, basically Chapter 7 cases hidden within Chapter 13 petitions, blur the distinction between the chapters

into a meaningless haze."); *In re Dicey*, 312 B.R. 456, 459-60 (Bankr. D.N.H.2004) (stating "[n]ot only is the Plan a thinly disguised liquidation, but it is in essence only a payment plan for the Debtors' bankruptcy attorney's fees. Congress did not create Chapter 13 as a vehicle solely for the payment of attorney's fees."). *But see In re Molina*, 420 B.R. 825, 830-33 (Bankr. D.N.M. 2009) (holding that a debtor who is in "economic straits;" "literally doing all that the statute requires of her;" ineligible to file for Chapter 7; and compliant with "the letter, and the spirit, of the chapter 13 law as Congress has written it" may file an Attorney Fee-Only Chapter 13 Plan).

*Id.* at 22, n. 14.

The good faith inquiry also brings into question whether the Debtor should be in a Chapter 13 case in the first place. Typically a debtor chooses Chapter 13 over Chapter 7 in order to save real estate by curing mortgage arrears or to avoid nondischargeability litigation. Neither of these motives are present here. The Debtor's schedules list ownership of a one-half (½) interest in a mobile home and lot securing a lien to the North Carolina State Employees' Credit Union.[8]  However, there is no non-exempt equity in the property that the Debtor is seeking to protect and the Debtor proposes to pay these secured claims outside of the plan.[9]  *See Ingram v. Burchard,* No. 12-cv-408-YGR, 2012 WL 4497911 (N.D.Cal. 2012) (court determined that a plan that proposed no repayment to unsecured debtors and a "strip off" of unsecured junior mortgage had not been proposed in good faith where the plan provided payment only of administrative and attorney fees).

This Court holds that the totality of circumstances approach should be applied to the "attorney fee only" Chapter 13 plans on a case by case basis to determine if the case and plan were filed in good faith. This Court finds that "attorney fee only" Chapter 13 petitions and plans are not

---

[8] Schedule A lists a one-half (½) interest in a mobile home and lot at 7467 Rock Ridge School Road, Kenly, North Carolina.

[9] Schedule D lists the North Carolina State Employees' Credit Union as holding a lien in the amount of $51,361.00 against the property at 7467 Rock Ridge School Road, Kenly, North Carolina, which is valued at $81,518.00. In Schedule C, the Debtor claims $12,632.96 of the value of the property as exempt pursuant to N.C. Gen. Stat. § 1C-1601(a)(1) (2012).

per se filed in bad faith as the debtor, upon an objection by the Trustee or unsecured creditor, may be able to prove circumstances which would justify an attorney fee only case.[10]

Here, with the early termination provision, there are no priority or secured creditors paid through the plan other than the Trustee's fees and the Debtor's attorneys' fees.  The plan is in essence only a payment plan for the attorneys' fees and this is unacceptable.[11]  Chapter 13 was not created as a vehicle for the payment of attorneys' fees only.  *Dicey,* 312 B.R. at 460.  This below median income Debtor has little incentive to stay the course for three (3) years.  All of the Debtor's secured debts will be paid directly, outside of the plan.  The Debtor is not saving her home by paying mortgage arrears or protecting non-exempt equity or assets.  The Debtor is not avoiding repossession of a vehicle, or holding at bay tax or domestic support creditors.  If the Debtor defaults, the case will be dismissed, and she can file another Chapter 13 petition.  The Debtor is not adjusting anything.  The Debtor is cancelling and eliminating the claims of unsecured creditors while deciding to only pay her attorney.  The point is whether the Debtor is attempting to discharge debts at the expense of creditors, or is the Debtor making an honest effort to repay them to the best of her ability.  There is little doubt that these types of plans are attempting to manipulate the Bankruptcy Code to discharge debts at the expense of  creditors.  This plan, with the Trustee's termination language, has been constructed specifically to pay no dividend to unsecured creditors rather than making payments for the entire applicable commitment period, which would result in some payment to the Debtor's unsecured creditors.

---

[10]A debtor with dire circumstances may also have available the hardship discharge pursuant to 11 U.S.C. § 1328(b).

[11]The Trustee did not object to fees of $2,925.00 charged for what is essentially a Chapter 7 case.

22

Since the early termination language has been held to be in direct conflict with 11 U.S.C. § 1325(b)(4)(B), this plan will now pay a small dividend to unsecured creditors. Without the early termination language, this plan will now meet the good faith requirements as debtor's attorney will not be the only recipient of plan dividends. In most cases, attorney fee only cases with no dividend to any other creditors will not meet the good faith requirements of §§ 1325(a)(3) and (a)(7). The Court will review these cases based on the totality of the circumstances.

The Debtor's plan proposes to pay $99.00 per month for thirty-six (36) months. If the Debtor completes her Plan as proposed at thirty-six (36) months, this will result in a 2.1% dividend paid to the unsecured creditors. The Court finds the early termination language included in the Trustee's Motion for Confirmation is void. The Debtor's plan may be confirmed with a payment of $99.00 per month for thirty-six (36) months. Since the plan will not be terminated early for the reasons set forth above, the Court finds the petition and plan are filed in good faith.

## CONCLUSION

Therefore, the Trustee's Motion to Dismiss is **DENIED**. The Trustee shall file his motion for confirmation for a plan of $99.00 per month for thirty-six (36) months with no early termination language.[12]

**SO ORDERED.**

**END OF DOCUMENT**

---

[12]Since $99.00 does not appear to be available after subtracting Schedule J expenses from Schedule I income, the issue of feasibility pursuant to 11 U.S.C. § 1325(a)(6) may be an issue at a confirmation hearing, if an objection to the Trustee's Motion for Confirmation is filed. The Trustee may also want to examine the expenses claimed by debtor in Schedule J to determine if all claimed expenses are reasonably necessary to be expended pursuant to 11 U.S.C. § 1325(b)(2)(A) to determine if any additional projected disposable income may be available. However, at a minimum, the Debtor has projected her disposable income to be $99.00 per month.